### In re F. B. VANDEGRIFT & CO.

#### (Circuit Court, D. Massachusetts. April 8, 1905.)

#### No. 1,406 (1,571).

CUSTOMS DUTIES—CLASSIFICATION—SHEARED STEEL SHAPES.

In construing the provisions for "plate iron or steel sheared," and for "sheared * * * shapes," found respectively in paragraphs 126, 135, Schedule C, § 1, Tariff Act July 24, 1897, c. 11, 30 Stat. 159, 161 [U. S. Comp. St. 1901, pp. 1637, 1638], *held*, that the former was intended to cover stock plates of a general commercial shape and for ordinary use, and the latter something not in general stock, but sheared to a particular or given shape, and that certain sheets of steel, cut, according to a sketch, and for a special purpose, to a specific shape, varying very slightly from a rectangle, are within the latter provision.

On Application for Review of a Decision of the Board of United States General Appraisers.

The decision in question affrmed the assessment of duty by the collector of customs at the port of Boston on merchandise imported by F. B. Vandegrift & Co. The opinion filed by the board reads as follows:

Fischer, General Appraiser. The merchandise in question consists of plates of steel 154½ inches by 156 inches by 62½ inches by 63¼ inches, and one-fourth of an inch in thickness. Duty was assessed thereon at the rate of five-tenths of one cent per pound, under the provisions of paragraph 126, Schedule C, § 1, Tariff Act July 24, 1897, c. 11, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1637], which reads as follows:

"(126) Boiler or other plate iron or steel, except crucible plate steel and saw plates hereinafter provided for, not thinner than number ten wire gauge, sheared or unsheared, and skelp iron or steel sheared or rolled in grooves, valued at one cent per pound or less, five-tenths of one cent per pound. * * *"

The importers claim that for the reason that these plates have been cut to certain size and shape, and are not rectangular, they are properly dutiable at the rate of four-tenths of one cent per pound, under the provisions of paragraph 135, 30 Stat. 161 [U. S. Comp. St. 1901, p. 1638], which reads as follows:

"(135) * * * Sheets and plates and steel in all forms and shapes not specially provided for in this act, all of the above, * * * valued above one cent and not above one and four-tenths cents per pound, four-tenths of one cent per pound. * * *"

The importers rely upon the ruling laid down in G. A. 5,395 (T. D. 24,602). That case differs entirely from this. The merchandise which was the subject of that ruling consisted of shapes or forms of steel which had been sheared or stamped out of plate, and which were, as the board held, no longer sheets or plates, but articles made therefrom. The merchandise now before us does not consist of articles made from plates, but are plates and nothing else. All plates are sheared after leaving the rolls, and these plates were sheared at a slight angle from a true rectangle, which did not alter their character or form as plates. The language of paragraph 126 is very broad. It does not merely cover boiler or other similar plate, but it covers boiler or any other kind of plate, iron, or steel, except crucible plate steel or saw plates. As this merchandise is clearly plate steel, it is covered by the provision. An examination of the invoice discloses the fact that these plates are valued above one cent, and not above two cents, per pound. As the paragraph provides a higher rate for plates of such value than was assessed, we must overrule the protest, without affirming the correctness of the classification.

Charles P. Searle, for petitioners.
Melvin O. Adams, U. S. Atty.
William H. Garland, Asst. U. S. Atty.

ALDRICH, District Judge. The question in this case is whether certain merchandise, consisting of sheets of steel, admittedly cut to a specific shape according to a sketch, and for a special purpose, was dutiable under paragraph 126 or under paragraph 135 of the tariff act of July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 159, 161 [U. S. Comp. St. 1901, pp. 1637, 1638].

Unquestionably the language of paragraph 126, "boiler or other plate iron or steel * * * sheared or unsheared," as well as the language of paragraph 135, "pressed, sheared or stamped shapes," is sufficiently broad to cover the merchandise in question. Still,

looking at the sections of the statute to which I have referred, and the context, in connection with the testimony as to the kind and character of steel plates known in the steel trade, it would seem that the general description of sheared or unsheared shapes, contained in paragraph 126, was intended to cover steel stock plates of commerce, sheared or unsheared, of a general commercial shape, and for ordinary use, and that the language of paragraph 135, "sheared * * * shapes," was intended to cover something out of the ordinary commercial course—something not in general stock, not usual in the trade, but something sheared to a particular or given shape.

The language of paragraph 126 is general, "sheared or unsheared," with no suggestion of a particular shape, and the natural inference is that it had reference to a usual commercial shape, while the language of paragraph 135 is more specific; sheared shapes manifestly meaning plates of steel shaped into a particular form by shearing. It is difficult to see why the reasoning and the decision of the board of appraisers in G. A. 5,395 (T. D. 24,602) do not cover the case now under consideration. It is there said:

"The fact that the imported articles were cut from sheets or plates of steel takes them out of paragraph 126, for they are no longer sheets or plates, but forms or shapes, not structural in form, and answer the description set out in paragraph 135. What is meant by 'sheared' in paragraph 126 is that process of finishing which results in trimming off the rough edges of sheets or plates after the process of rolling is completed, and does not include articles cut out of such sheets or plates. Such cutting up results in destroying the form. * * * In fact, these articles answer the specific description of 'sheared or stamped plates,' mentioned in paragraph 135."

So of the plates in question, the record discloses that the ordinary commercial rectangular shape, with the rough edges sheared off, was subjected to a further process of shearing for the purpose of changing the form and shaping the plates to a given design for a particular purpose, and it results that subjecting them to such shearing process produced sheared shapes within the meaning of paragraph 135.

The decision of the Board of Appraisers is reversed.